**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Case Number: 1:22-cv-02650-CNS-NRN

SHEA CURRAN, individually

Plaintiff.
v.

TOKENSOFT, INC., a Delaware corporation,

MASON BORDA, individually,

Defendant.

---

**RESPONSE TO MOTION TO QUASH SUBPOENA [ECF # 45]**

---

Plaintiff Shea Curran, by and through the undersigned, hereby submits his response to Defendant's Motion to Quash a Subpoena to Slack Technologies, Inc. [ECF # 45].

## INTRODUCTION

Tokensoft Inc. [Tokensoft] and Mason Borda [Borda] seek to quash the subpoena Shea Curran [Curran] sent to Slack Technologies, Inc. [Slack] because the subpoena was not sent before November 20, 2023, the close of discovery. The Court should not quash the subpoena because the Defendants do not have standing to challenge the subpoena, the need for the information from Slack did not become necessary until right before the close of discovery, and the information is important to Curran's claims.

## BACKGROUND FACTS

Curran issued his First Set of Discovery Requests to Tokensoft on April 21, 2023. At that time, he requested dates from the Defendants to hold Borda's, Lucas Kozinski's, and Deanna Hilberman's depositions during the weeks of June 5, 12, or the 19th. [Exhibit A, Curran Discovery Requests].

Curran's discovery requests sought communications between the various parties involved from all mediums used by Tokensoft. In response to these requests Defendants only produced emails. However, internal communications among Tokensoft employees were also transmitted on Slack, an instant messaging platform.

On July 19, 2023, to start the conferral process regarding Defendant's responses to Curran's discovery requests, Curran sent out a discovery deficiency letter asking Defendants to supplement its response to Curran's requests for communications from all parties by producing Slack messages. [Exhibit B, Discovery Deficiency Letter]. The parties worked together to resolve the main discovery dispute, and the Defendants produced additional documents. At that time, the Slack messages seemed to be a collateral issue not centrally important to Curran's claims because Curran did not know that Borda would subsequently challenge the authenticity of Curran's screenshot Slack messages.

Curran took Borda's deposition on Friday, November 10, 2023, ten days before the close of discovery. In Borda's deposition, Borda represented that Slack was an official communication line for Tokensoft. [Exhibit C, Borda Deposition, 58:11 – 13]. Further in the deposition, Borda represented that Slack does not allow for the export of direct messages. [Ex. C, 111:10 – 22].

Subsequently, Borda questioned whether the Slack messages produced by Curran were real. [Ex. C, 112:11 – 113:3].

After reflecting on the responses over the weekend and researching, Curran learned that Slack messages should be readily available to Borda and Tokensoft. [Exhibit D, Guide to Slack Import and Export Tools]. Also, on its face, it is incredible that Tokensoft would not have a way to access the history or transcripts of communications made on one of its official communication lines.

Tokensoft's 30(b)(6) deposition was held on November 16, 2023. At the close of the deposition, Curran's counsel asked counsel for Defendants for time to talk the next day about the production of Slack messages. Due to the upcoming holidays, this was not possible.

Curran concluded that sending a subpoena to Slack to obtain the information would be the most inexpensive and speedy way to resolve the matter, given Borda's position that no records exist. After conferring with Defendants, Defendants agreed to provide authorization for Slack to produce Curran's Slack messages. However, Curran would have to wait for Tokensoft to sign the release to obtain this authorization. Curran conducted more research and learned he should have the right to access his communications without authorization from Tokensoft. [Exhibit E, Consent and Discovery Under the Stored Communications Act]. In addition, Curran learned that without Tokensoft's permission, he could request information about the existence of communications. [Exhibit E].

Discovery ended on November 20, 2023.

On December 6, 2023, Curran emailed Defendants a copy of the subpoena, informing them that he would send it to Slack later that morning. [Exhibit F].

On December 19, 2023, Slack responded to Curran's subpoena.

On December 20, 2023, the Defendant's counsel emailed counsel for Curran, informing him that they would file a motion to quash later that day. In response, Curran's counsel told them that he had forgotten to forward them Slack's responses to the subpoena but would do so when he returned to the office the next day and that Slack did not provide any documentation. [Exhibit G].

Later that day Defendants filed the motion to quash. Defendants were able to file the motion because they had received the responses to the subpoena from Slack.

**ARGUMENT**

**1. The Court does not have to quash the untimely subpoena because the Defendants do not have standing to object to the subpoena**

Defendants admit they do not have standing to challenge the subpoena but ask the court to quash the subpoena, *sua sponte* because it was issued after the close of discovery. [Motion to Quash, ECF # 45 at 4].

Because the Defendants lack standing, the Court is not required to *sua sponte* quash the untimely subpoena. *Wardley v. McLachlan*, No. 2:21-CV-00128, 2022 WL 4247810, at *2 (D. Utah Sept. 15, 2022).

**2. The untimely subpoena could not have been sent before the close of discovery.**

In considering whether to quash a subpoena, Courts look at when the untimely subpoena was sent and whether it could have been sent sooner. *See Generally, Wardley,* 2022 WL 4247810, at *2.

Regarding the timing of the subpoena, courts have quashed subpoenas sent on the eve of trial or more than a year after the close of discovery. *Galloway v. Islands Mech. Contractor, Inc.*, No. CIVILACTION2008071, 2013 WL 163985, at *2 (D.V.I. Jan. 14, 2013).

In this case, trial has not been scheduled, and Curran sent the subpoena sixteen days after the close of discovery. And twenty-six days after he learned that Defendants would challenge the authenticity of Curran's Slack message evidence. In similar factual situations, Courts have declined to quash the subpoenas. *Wardley*, 2022 WL 4247810, at *1.

Further, Courts have quashed a subpoena sent after the close of discovery if the party seeking the information had enough information before the close of discovery to request the documents timely. *Peterbilt of Great Bend, LLC v. Doonan*, No. 05-1281-JTM, 2006 WL 3193371, at *2 (D. Kan. Nov. 1, 2006).

Curran knew that Tokensoft used Slack and that it could have relevant information to the case. Curran sought discovery from Tokensoft of the Slack messages, which were not produced because Tokensoft represented it did not have access to them.

Receiving the Slack messages did not become imperative for Curran until Borda challenged the authenticity of his evidence. The Plaintiff did not learn about this until ten days before the close of discovery. Most of those ten days were spent preparing for the Tokensoft 30(b)(6) deposition and researching the Stored Communications Act. Moreover, before the close of discovery, Plaintiff sought to confer with Defendant, but because of the holiday, this proved impossible.

Curran acted quickly and with reasonable diligence to issue the subpoena as soon as he learned that the authenticity of his evidence would be challenged.

**3. Plaintiff notified Defendants of the service of the subpoena timely.**

Fed. R. Civ. P. 45(b)(1) requires that the party issuing a subpoena provide notice to all parties in the litigation before the service of the subpoena to provide all parties with the opportunity

to object to the production of documents. *Pagan-Colon v. Walgreens of San Patricio, Inc.*, 264 F.R.D. 25, 28 (D.P.R. 2010).

Here, Curran provided notice to Defendants before he served the subpoena. [Exhibit G]. The notice provided the return date for the subpoena.

Further, Fed. R. Civ. P. 45(b)(4) does not require Curran to file proof of service. The rule states that proving service, *when necessary*, requires filing with the issuing court a statement showing the date and manner of service and the names of the persons served. The statement must be certified by the server. [Emphasis added].

In this case, proof of service was unnecessary because Defendants had already been provided with a copy of the subpoena and informed of when it would be served and on whom it would be served.

**4. The Slack messages are important to Curran's case.**

Curran will use the Slack messages to support his testimony that he performed work with and sold services and products to the clients for whom he claims commissions. If Defendants are going to challenge the authenticity of this evidence, he should be allowed to get the evidence from Defendants or directly from Slack.

Further, Borda has stated under oath that the Slack messages are not producible. Curran should be allowed to test this assertion by obtaining Tokensoft's retention plans and information regarding the existence of communications. If the information proves to be readily available and easily producible, it could be used to impeach Borda's credibility.

Furthermore, the retention schedules may show that Tokensoft deleted Slack messages during this litigation. If that occurred Curran will ask the trial court for a spoilation instruction.

Finally, Curran's discovery requests are proportional to the amount at issue in this case. Curran is seeking a judgment against the Defendants for $500,018.27 in damages and penalties, and producing the Slack messages should be easy and essentially free.

## CONCLUSION

This Court should not quash the subpoena to Slack because Defendants do not have standing to challenge the subpoena; Curran started the process of requesting the information before the close of discovery and sent the subpoena very close to the close of discovery and did so within a reasonable amount of time of learning that Defendants would challenge the authenticity of his Slack message evidence.

WHEREFORE, Plaintiff Shea Curran requests that the Court deny the Motion to Quash the Subpoena, or in the alternative to Order Tokensoft to produce the information requested in the Subpoena.

DATED this January 5, 2024

MITCHINER LAW, LLC

/s/ Thomas H. Mitchiner

Thomas H. Mitchiner
Mitchiner Law, LLC
1240 S. Parker Rd. Suite 103
Denver, CO 80231
Ph.# 720-538-0371
Email: tmitchiner@mitchinerlawllc.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true copy of the above and foregoing was electronically filed with the Clerk of the United States District Court using CM/ECF system which will send notification to counsel referenced below, this January 5, 2024, addressed to:

Allison Joy Dodd
Stephanie McConkie
Messner Reeves LLP
1430 Wynkoop Street Suite 300
Denver, CO 80202 303-623-1800
Fax: 303-623-0552
Email: adodd@messner.com
SMcConkie@messner.com
Attorneys for Defendants

/s/ Thomas H. Mitchiner
Thomas H. Mitchiner